STERN & STERN TEXTILES, INC., SUCCESSOR IN INTEREST TO HUGUET FABRICS CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 31362, 33978, 33979, 53104. Filed September 11, 1956.

*Richard L. Shook, Esq.*, for the petitioner.
*Emil Sebetic, Esq.*, for the respondent.

#### OPINION.

MULRONEY, *Judge:* Petitioner corporation is successor in interest to Huguet Fabrics Corporation, the petitioner in Docket No. 7292,

*Huguet Fabrics Corporation*, 19 T. C. 535. That case involved petitioner's claims for relief from excess profits taxes for its fiscal year ending September 30, 1941. The petitions filed in the four cases now before the Court allege error in the respondent's disallowance of applications for relief under section 722 (b) (1), (2), (3) (A), (3) (B), (4), and (5), Internal Revenue Code of 1939, for the taxable years ending September 30, 1942, 1943, 1944, 1945, and 1946. The four cases were consolidated.

One of the issues raised by respondent's answer in each of the four cases was whether petitioner was barred from a hearing on the merits under the doctrine of collateral estoppel by virtue of this Court's determination in the previous case in 19 T. C. 535. We granted respondent's motion for severance of this latter issue and the collateral estoppel issue was submitted and is the only issue to be decided at this time. At the hearing certain facts were stipulated into the record and the entire record and proceedings in Docket No. 7292 were introduced by respondent, together with the Form 991 claims for the years here involved. Petitioner's evidence was designed to show that there was a mistake in the stipulation of facts in prior Docket No. 7292.

The doctrine of collateral estoppel, or, as it is sometimes called, estoppel by judgment, is that a decision on the merits in one suit precludes further litigation between the same parties of issues which were presented, litigated, and decided when the controlling facts and applicable legal rules remained unchanged. *Fairmont Aluminum Co.*, 22 T. C. 1377, and cases there cited. It is applicable to tax cases, and we have held a prior determination denying relief under portions of section 722 for one year precludes consideration of claims for relief under identical portions of section 722 for later years. *Jacob's Fork Pocahontas Coal Co.*, 24 T. C. 60; *George Kemp Real Estate Co.*, 17 T. C. 755, affd. 205 F. 2d 236, certiorari denied 346 U. S. 876. Three things must be present before the principles of collateral estoppel are applicable. First, there must be identity of the parties, second, there must be identity of the issues, and third, the controlling facts and applicable legal rules must remain unchanged.

Here it was stipulated that the parties in both proceedings are identical. Petitioner makes no argument that there is not substantial identity of issues. We have examined the entire record in both proceedings and compared the Form 991 claims and pleadings in the prior case and in the instant cases and we find the identical matters and issues decided in the prior proceeding were also raised in the instant cases. Petitioner did not allege, and does not argue, that any change has occurred in the applicable legal principles. In *Jacob's Fork Pocahontas Coal Co.*, *supra*, we pointed out there has been no change in the legal rules applicable in section 722 cases.

Petitioner on brief narrowed his defense to the estoppel by judgment plea to the "controlling facts" requirement. His argument is that the facts of the prior case and those of the present case are different. And this is so, petitioner argues, "due to a mutual mistake of fact made by the respondent and the petitioner in a stipulation in the prior trial." Petitioner adds another argument to the effect that the collateral estoppel plea should be denied for it will result in injustice to the taxpayer.

The facts found in our prior case in 19 T. C. 535 can be incorporated here by reference but we feel it would be helpful to give a short summary by way of background for the discussion of the issues now before us.

Petitioner, a silk manufacturing company, sought relief from excess profits tax for its fiscal year ending September 30, 1941, under the provisions of section 722 (b) of the 1939 Internal Revenue Code. Respondent denied relief and in Docket No. 7292 petitioner sought to prove the denial was error on the general ground that its average base period net income is an inadequate standard of normal earnings. Its main reliance was on the allegation that it changed the character of its business during its base period by going into a new and different market with a new and different product. In Docket No. 7292 we found as a fact that petitioner commenced the manufacture and sale of fabrics manufactured from nylon in the last quarter of its last fiscal year of its base period ended September 30, 1940. We there held this was a change from its silk and combination silk and rayon manufacturing business but the differences in the products were insufficient to satisfy the requirements of the statute. That is, the evidence of some differences which its nylon fabric possessed which distinguished it from silk or combination of silk and rayon fabrics was insufficient to establish a change in the character of taxpayer's business when it started manufacturing nylon fabric.

Our Opinion in Docket No. 7292 next takes up the "further argument" advanced by petitioner that it went into a new business. This argument was that all of the nylon fabrics were in fact sold to the manufacturers of ladies' brassieres and girdles, whereas prior to the time the petitioner manufactured and sold nylon fabrics all of its sales of all of its fabrics were made through jobbers. We examined and discussed the evidence relied on to establish this point saying:

Relevant evidence with respect to this point is contained in (1) several pages of a somewhat general and incomplete stipulation and (2) a very general statement of an interested witness, a person who was the general manager, vice president and a director of the petitioner during the taxable periods involved. * * *

We quoted much of the testimony of the witness referred to above and then summarized it stating it was "to the effect that during the

base period petitioner sold all its nylon fabrics directly to the manufacturers of ladies' brassieres and girdles." We pointed out the witness's testimony did not identify such sales and we quoted another portion of his testimony that was confusing and cast some doubt on the accuracy of his statement that all base period sales of nylon were made to the undergarment industry.

We next looked at the stipulation which showed that in the month of September 1940 the sales to 5 jobbers (including sales to Wm. Cohen Fabrics, $8,579.25) totaled $81,719.84, and the total sales that month were $90,939.50, of which $10,346.45 were sales of nylon. This allowed the inference that at least $1,126.79 nylon sales were made to jobbers in September 1939, none of whom were manufacturers of undergarments.

Here is where petitioner centers his argument in the instant cases. His evidence is designed to show that the portion of the stipulation showing sales to jobber Wm. Cohen Fabrics of $8,579.25 in September 1940 was wrong; that in fact there were no sales to Wm. Cohen Fabrics in September 1940 at all; that this was a mutual mistake of fact in the stipulation, and the true fact is the sales to jobbers in the month of September 1940 were $73,140.59. Petitioner's argument is that in Docket No. 7292 our "decision turned upon this finding" that $1,126.79 nylon sales were made to jobbers showing no clear-cut change in selling policy by the petitioner such as to warrant the application of section 722. From this he argues the *facts* in the instant cases are different from the *facts* in the prior case and thus one of the essential elements for the application of collateral estoppel is not present.

We need not go into the question of whether petitioner's evidence establishes no sales were made to Wm. Cohen Fabrics in September 1940. We can assume it does. The controlling facts were the ultimate facts or the events and results that occurred during the base period, not the evidence by which petitioner sought to establish what occurred. The allegations of fact in the instant cases were substantially identical to the allegations in the former case.

In the prior case the petitioner introduced certain evidence designed to produce a conviction in the mind as to the existence of the ultimate facts which would warrant section 722 relief. We held that evidence insufficient. The fact that petitioner could now produce more or different evidence which would tend to prove the same ultimate facts it sought to prove in the first case does not entitle it to relitigate the issue. Petitioner fails to distinguish between evidence and the ultimate facts to be found from the evidence introduced. The stipulation of facts was not different from the other evidence. It was merely an admission of certain evidentiary facts relieving the party of the inconvenience of making other proof. As an admission it is considered and weighed like other evidence and it is considered in the light of

other evidence in arriving at the ultimate determination. Even if one or more of the evidentiary facts introduced are erroneous, the ultimate determination stands as a bar to relitigation. If this were not so there would be no end to litigation. In *Fairmont Aluminum Co., supra*, we said at page 1381:

Perhaps, on a different record, a different result might follow, but it is the essence of the doctrine of collateral estoppel that only one opportunity be given, in the normal course, to litigate an issue. * * *

Petitioner is in the same situation as it would be if its bookkeeper had testified as to the sales to jobbers and he was defending against the bar of the judgment on the ground his testimony as to the sales to 1 jobber during 1 month was wrong.

Petitioner had the burden of proof and the prior adjudication is based upon his failure to discharge that burden. We said in our Opinion: "insufficient evidence was introduced to establish the existence during the base period of a qualifying change within the requirements of section 722 of the Code [19 T. C. 535, 547]." It cannot be said, as petitioner now argues, our decision in the prior case "turned" on this bit of evidence which petitioner now says is wrong. The petitioner in the prior case was endeavoring to show it changed the character of its business by the stipulation and the testimony of the witness to the general effect that after it started manufacturing nylon it sold nylon fabric direct to manufacturers instead of through jobbers. We held both testimony and stipulation insufficient to establish that fact and in passing we also pointed out certain portions of the stipulation even warranted an inference it did not wholly change its method of doing business. But the Opinion was not based and did not "turn" on the correctness of such inferences. It was grounded solely on the insufficiency of the evidence. We drew other inferences from other portions of the stipulation which indicated nylon sales might well have been made to jobbers in the base period and we pointed out there was a complete lack of any evidence showing nylon sales to specifically named manufacturers of brassieres and girdles until after the base period. Finally we pointed out that even if nylon sales were made to manufacturers, and, as the witness stated, the jobbers' percentages were eliminated, the petitioner failed to show the benefit of such elimination of any such commission was not passed on to the manufacturers of girdles and brassieres in the form of reduced selling prices. It is abundantly clear our Opinion in the former case was on the merits and it turned on the insufficiency of the evidence. In *Fairmont Aluminum Co., supra*, we said at page 1381:

There is a burden of proof on some party in every case, and even though the adjudication may be rested upon a failure to discharge that burden it is nonetheless an adjudication on the merits. * * *

As a decision on the merits the estoppel of the judgment on the fact issue presented is complete.

Little need be said with respect to petitioner's other point that estoppel by judgment should not be applied because it will result in injustice. Petitioner's argument stems from language in *Commissioner* v. *Sunnen*, 333 U. S. 591, where it is stated: "where two cases involve income taxes in different taxable years, collateral estoppel must be used with its limitations carefully in mind so as to avoid injustice."

The opinion in the *Sunnen* case merely holds the doctrine of collateral estoppel should be confined to cases "where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged."

We have held the stated requirements are present here and when that is so, the *Sunnen* case holds, "the prior judgment will be conclusive as to the same legal issues which appear, assuming no intervening doctrinal change."

The application of the doctrine of collateral estoppel in tax cases is of as much benefit to taxpayers generally as to respondent. It is grounded upon the principle that relitigation of identical issues "tends to defeat the ends of justice." *Fairmont Aluminum Co., supra.* Of interest is *Arthur Curtiss James*, 31 B. T. A. 712, wherein the taxpayer was asserting the doctrine of collateral estoppel and the Commissioner contended the prior decision was based on an erroneous fact (accumulated earnings and profits figure) contained in the stipulation, and therefore the doctrine of collateral estoppel did not apply. We held for the taxpayer saying the prior decision "conclusively established" the fact.

*Decision will be entered for the respondent.*