Richard M. Gooding and Marcella M. Gooding, Husband and Wife v. Commissioner.
Gooding v. Commissioner
Docket No. 85694.
United States Tax Court
T.C. Memo 1961-299; 1961 Tax Ct. Memo LEXIS 50; 20 T.C.M. (CCH) 1542; T.C.M. (RIA) 61299; October 30, 1961
Joe S. Gullo, Esq., for the petitioners. Charles C. Shaw, Jr., Esq., for the respondent. MULRONEY Memorandum Opinion MULRONEY, Judge: The respondent determined a deficiency in the petitioners' income tax for 1958 in the amount of $221. The deficiency arose from respondent's disallowance of a bad debt deduction in the amount of $1,000 claimed by the petitioners for the year 1958. Petitioners in their pleadings claim *51 there was no deficiency for the year 1958, and, in fact, an overpayment of approximately $351 on their income tax for 1958. However, in the same petition petitioners claim "ALTERNATELY" an overpayment of approximately $10,130 on their 1958 tax, based upon a purported overpayment of their 1951 income tax in the amount of $10,000. Petitioners now abandon their first claim and press the second. With the exception of one exhibit (a letter from the assistant regional commissioner in Cincinnati, which has no bearing on the issues) introduced in evidence by petitioners' counsel, all of the facts have been stipulated. Richard M. Gooding and Marcella M. Gooding, husband and wife, are residents of Arlington, Virginia. They filed a joint income tax return for 1958 with the district director of internal revenue at Richmond, Virginia. Richard will hereinafter be called the petitioner. Petitioner is a petroleum chemist and during the period here involved was employed by the Bureau of Mines, Department of the Interior, Washington, D.C. On November 23, 1950 petitioner married Frances R. Lee of Dallas, Texas. On March 15, 1951 petitioner and Frances filed a joint declaration of estimated tax *52 for 1951 with the collector of internal revenue for the second district of Texas. The declaration showed an estimated tax of $11,052.40 for 1951 and a credit for estimated withholdings of $1,052.40. Of the balance of $10,000 estimated tax declared, Frances paid $7,500 and the petitioner paid nothing. Petitioner and Frances were divorced on June 20, 1951. On January 15, 1952 Frances filed a purported amended declaration of estimated tax for herself and petitioner showing an estimated tax of $43,800, a credit of $1,300 for estimated withholding, payments of $7,500 on prior declarations, and an unpaid balance of estimated tax in the amount of $35,000. Frances paid $35,000 with this amended declaration, which payment, together with the $7,500 she had paid on the prior declaration, made a total payment of $42,500. The amended declaration was not signed by petitioner, but Frances signed petitioner's name to the declaration without his knowledge. Subsequent to June 20, 1951 and within the year 1951 petitioner married Marcella and they filed a joint income tax return for 1951 on February 29, 1952 in which they reported their combined salaries in the amount of $10,301.03, computed a tax of *53 $1,600.24, claimed a credit of $1,754.28 for withholdings, and claimed an overpayment of tax in the amount of $154.04. On March 15, 1952 petitioner and Marcella filed an amended joint return for 1951 in which they reported Marcella's salary, excluded one-half of petitioner's salary for the period of January 1, 1951 to June 20, 1951, when petitioner was married to Frances, with the explanation that such salary was community income of which one-half belonged to Frances, included a one-half share of purported community income received by Frances, consisting of partnership income, dividends and interest, and also claimed one-half of a loss sustained by Frances on Texas ranch property. Petitioner and Marcella on their amended joint return, also claimed a credit for taxes paid in the amount of $16,123.73, consisting of $1,754.28 withheld from the salaries of petitioner and Marcella and $14,369.45 of the $42,500 paid by Frances as estimated tax. Based on these items, petitioner and Marcella claimed an overpayment of tax in the amount of $3,643.07. On July 2, 1954 the respondent mailed a statutory notice of deficiency to petitioner and Marcella showing a determination of a deficiency in *54 their income tax for 1951 in the amount of $883.60, with the explanation that petitioner's entire salary for 1951 was includible in gross income for that year. Petitioner and Marcella filed a petition with the Tax Court on September 14, 1954 alleging (1) that one-half of his salary from January 1, 1951 to June 20, 1951 was excludable from gross income; (2) that petitioner had erroneously included in his income for 1951 one-half of the community income belonging to Frances; (3) that they were entitled to tax payment credits in the amount of $16,123.73 ($14,369.45 plus $1,754.28); and (4) that they were entitled to a refund of about $15,800, which represented a purported overpayment of their income tax for 1951. The trial of this case resulted in an opinion and decision in favor of respondent, Richard M. Gooding, 27 T.C. 627. In the opinion it is stated the questions for decision were as follows: 1. Did petitioner Richard M. Gooding, upon or after a prior marriage to a Texas resident in November 1950, change his domicile from the State of Virginia (a non-community property State) to the State of Texas (a community property State), and thereby establish a marital community *55 in Texas, so that there is includible in his gross income for the year 1951, pursuant to the community property laws of Texas: (a) Only oneha-lf the salary which he received from employment in Washington, D.C., during the period of January 1 to June 20, 1951, which preceded the termination of such marriage by divorce; and (b) one-half of certain income which his former wife received during the same period, when she was maintaining a separate residence in Texas? 2. Are Gooding and his present wife entitled to apply as a credit, against their joint income tax liability for the year 1951, an arbitrary portion of amounts which the former wife paid, both before and after the divorce, with respect to a joint declaration and a purported amended joint declaration of estimated income tax for such year? As to the first issue, the Tax Court held that petitioner did not establish that he and Frances had a marital domicile in Texas during the period of January 1 to June 20, 1951 and that, consequently, his gross income for 1951 should be recomputed to include all the salary of his 1951 employment in Washington, D.C. and to exclude therefrom any portion of the income which Frances derived in *56 Texas. On the second issue involving the claimed credit for taxes paid in the amount of $14,369.45, the Tax Court, after stating that since the petitioner and Marcella "did not pay any of the [$14,369.45] for which they claim credit, such amount cannot represent an overpayment by them", held that in recomputing the joint tax liability of petitioner and Marcella for 1951 "no credit should be allowed for any portion of the $42,500 which Frances Lee paid on the * * * declaration of estimated tax." The Tax Court was affirmed in Gooding v. Commissioner, 250 F. 2d 765 (App. D.C. 1957). Respondent argues that the doctrine of collateral estoppel is applicable here in that the same issue was presented, litigated and decided in the Gooding case, supra, between the same parties who are now before us, and that the controlling facts and applicable legal rules remain the same. It is apparent that petitioner is once more trying to recover a portion of the 1951 prepayment of tax made by his former wife, and although we agree with respondent that the doctrine of collateral estoppel effectively prevents relitigation of this issue, see Commissioner v. Sunnen, 333 U.S. 591, *57 Stern & Stern Textiles, Inc., 26 T.C. 1000, affirmed 263 F. 2d 538, certiorari denied 361 U.S. 831, it is not necessary to rest our decision on that ground. The jurisdiction of the Tax Court is limited to the year, or years, covered by the respondent's statutory notice of deficiency. Sections 6212, 6214, Internal Revenue Code of 1954. [1]
In the case of overpayments, the jurisdiction of the Tax Court is defined in section 6512, as follows: SEC. 6512. LIMITATIONS IN CASE OF PETITION TO TAX COURT. * * *
(b) Overpayment Determined by Tax Court. - (1) Jurisdiction to Determine. - If the Tax Court finds that there is no deficiency and further finds that the taxpayer has made an overpayment of income tax for the same taxable year, * * * or finds that there is a deficiency but that the taxpayer has made an overpayment of such tax, the Tax Court shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Tax Court has become final, be credited or refunded to the taxpayer. *58 In this case the respondent's deficiency notice only covered the year 1958, and, consequently, our jurisdiction is limited to that year. [2] We have no jurisdiction to consider any purported overpayments for the year 1951, the year for which Frances made the payments on estimated tax which petitioner is here seeking to recover in part. CIBA Pharmaceutical Products, Inc., 35 T.C. 337; Robert J. Dial, 24 T.C. 117; and F. A. Gillespie Trust, 21 T.C. 739. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. Section 6214(b)↩ authorizes the Tax Court to consider any facts with relation to taxes of other years which might be necessary to correctly determine the amount of the deficiency in the year before it, "but in so doing shall have no jurisdiction to determine whether or not the tax for any other year has been overpaid or underpaid."